**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **REVCO SOLUTIONS INC.,**<br>Petitioner,<br>v.<br>**EQUIFAX INC.,**<br>Respondent. | Case No. 1:26-mc-00138 (TNM) |

**MEMORANDUM ORDER**

A group of debt collectors have sued several credit reporting agencies, including respondent Equifax Inc., in the Eastern District of California for implementing a new reporting policy. Petitioner Revco Solutions Inc., a medical-debt collector, is not a party to that case. But Equifax believes that Revco's business records can aid its opposition to class certification and its merits defense. So Equifax served a subpoena *duces tecum* on Revco seeking production of a broad range of records in the District of Columbia. After prolonged back-and-forth, Revco and Equifax reached agreements as to nearly all the subpoena's fifteen requests. Nearly.

Now Revco has filed in this Court a motion to quash two of the demands as unduly burdensome under Federal Rules of Civil Procedure 26 and 45. Equifax opposes and cross-moves to compel compliance. The Court agrees with Revco that Equifax's request for documents sufficient to show the effectiveness of Revco's debt-collection methods imposes an undue burden. But the Court agrees with Equifax that Revco has failed to show that a request for data about the debts Revco services implicates unduly sensitive information.

# I.

Equifax and two other credit reporting agencies announced in 2022 that they would cease reporting debts under $500 and debts less than one year old. *See* Second Am. Compl. ¶ 45, *Adams v. Experian Info. Sols., Inc.*, No. 2:23-cv-01773-DJC-JDP (E.D. Cal. Feb. 3, 2025), ECF No. 60. Alleging antitrust violations and tortious interference with contractual relationships, debt collectors and medical providers sued them in the Eastern District of California. *See id.* ¶¶ 117–56. Discovery is bifurcated, and the first phase closes on November 18, 2026. *See* Scheduling Order, *Adams*, No. 2:23-cv-01773-DJC-JDP (E.D. Cal. Jan. 12, 2026), ECF No. 88.

Revco is one of the nation's largest medical-debt collection companies. Equifax Inc.'s Opp'n Mot. Quash & Cross-Mot. Compel ("Mot. Compel") Ex. A at 3, ECF No. 2-3. Equifax believes that Revco's records may clarify whether the new credit reporting policies have actually harmed debt collectors. *See* Mot. Compel at 6, ECF No. 2-1. To this end, Equifax served Revco—a nonparty to the case—with a subpoena *duces tecum* on July 10, 2026, with responses originally due two weeks later. *See* Non-Party Revco Solutions Inc.'s Mot. Quash ("Mot. Quash") Ex. A ("Subpoena") at 2, ECF No. 1-2; Mot. Compel Ex. C at 2, ECF No. 2-5. Yet that initial deadline has come and gone. From July through September, Equifax and Revco exchanged numerous letters and engaged in several meet-and-confers to resolve disagreements about the proper scope of the subpoena. *See* Decl. of Christopher Yook ¶¶ 7–10, ECF No. 2-2; *see also* Non-Party Revco Solutions Inc.'s Mot. to Quash & Opp'n Cross-Mot. Compel ("Revco Reply") Exs. A–E (letters between Revco and Equifax), ECF No. 3-1. Revco and Equifax ultimately resolved thirteen of the fifteen requests. They also reached a partial agreement as to

Request Five. *See* Mot. Compel Ex. F at 6–7, ECF No. 2-8. Yet the parties remain at an impasse as to Request Five and Request Seven.

Revco moved to quash those two requests. *See* Mot. Quash. Equifax filed a cross-motion to compel production. *See* Mot. Compel. Soon after, the parties filed their oppositions and replies. *See* Revco Reply; Reply Equifax Inc.'s Cross-Mot. Compel ("Equifax Reply"), ECF No. 4. The motions are now ripe.

**II.**

Federal Rules of Civil Procedure 26 and 45 prohibit overly burdensome or disproportional subpoena requests. *See Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005). Federal Rule of Civil Procedure 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)&(iv) (cleaned up). Similarly, Rule 26 permits courts "for good cause" to "issue an order to protect a party or person from . . . undue burden." Fed. R. Civ. P. 26(c)(1). And discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Deciding a motion to compel "is the functional equivalent of deciding a motion to quash." *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 10 (D.D.C. 2012). So the Court considers both pending motions under the same standards. Courts first determine whether the information sought is relevant, then consider objections to the subpoena. *See BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). "Relevance is construed broadly in the discovery context as any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 46 (D.D.C. 2024) (cleaned up).

"Two principles" guide the undue-burden inquiry. *BuzzFeed*, 318 F. Supp. 3d at 358. First, the "Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). Second, Rule 26(b) requires courts to consider several factors. These include "(1) whether the discovery sought is unreasonably cumulative or duplicative; (2) whether the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive; and (3) whether the discovery sought is proportional to the needs of the case, taking into account the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *BuzzFeed*, 318 F. Supp. 3d at 358 (quoting Fed. R. Civ. P. 26(b)(1), (2)(C)). Thus, "courts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017) (cleaned up).

The person "objecting to production has a heavy burden to show that the subpoena should not be enforced." *Millennium TGA*, 286 F.R.D. at 11 (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984)). To carry that burden, the person must go beyond conclusory assertions and make a "specific" showing that compliance would constitute an undue burden. *See Ass'n of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993).

**III.**

Revco argues that Requests Five and Seven impose undue burdens. Revco carries its burden regarding Request Five, but not Request Seven. The Court considers each in turn.

**A.**

Start with Request Five. Though originally much broader, Revco and Equifax have narrowed Request Five to the following: "Documents sufficient to show the methods, policies, practices, and strategies [Revco] use[s] to collect Medical Debt, including . . . the . . . effectiveness of such methods, policies, practices, and strategies[.]" Subpoena at 11; *see* Mot. Compel at 7–8; Revco Reply at 2–3.

Relevance is straightforward. Equifax explains that this information "goes directly to both class certification and the underlying merits" in *Adams* because "[t]he effectiveness of various means of medical debt collection bears directly on what, if any, harm the debt collector class has suffered from the [credit reporting agencies'] limiting of medical debt reporting." Mot. Compel at 12. Revco does not dispute relevance. *See* Mot. Quash at 3–7; Revco Reply at 2–4. Request Five, as narrowed, seeks relevant information.

Now turn to undue burden. The parties focus primarily on the cost of compliance to Revco in terms of time and money. Responding to Request Five would not be "proportional to the needs of the case." *BuzzFeed*, 318 F. Supp. 3d at 358 (quoting Fed. R. Civ. P. 26(b)(1)). Even as narrowed, Request Five demands Herculean effort. Revco's records are simply not organized in a way conducive to Equifax's request. Revco "does not maintain a discrete report, or defined set of reports, containing its assessment of collection costs and channel performance." Decl. of Non-Party Revco Solutions Inc. ("Revco First Decl.") ¶ 18, ECF No. 1-2. Rather, information about the effectiveness of Revco's collection methods is "embedded across a large

body of routine operational reporting" spanning "more than 1,000,000 reporting instances from 2019 to the present." *Id.* ¶¶ 18–19; *accord* Suppl. Decl. of Non-Party Revco Solutions Inc. ("Revco Suppl. Decl.") ¶ 14, ECF No. 3-2. Because these reports "do not distinguish cost or performance analysis from other reporting in any queryable way," there is "no way to identify a responsive subset short of examining the reports themselves." Revco First Decl. ¶ 21; *accord* Revco Suppl. Decl. ¶¶ 12–13. Revco would need to review each report "manually." Revco First Decl. ¶ 20.

Revco estimates that reviewing one report for responsive material, and performing any necessary redactions, would require approximately two to four hours of work by both junior and senior personnel. *See id.* ¶ 22. "The blended rate for this work is approximately" $47 to $77 per hour. *Id.* That means complying with Request Five "would require thousands of reviewer hours and cost hundreds of thousands of dollars." *Id.* ¶ 23. Unsurprisingly, this review "would create a significant constraint on individual Revco employees' ability to perform this review with their daily responsibilities to effectuate Revco's ongoing business." *Id.* ¶ 24.

Revco sufficiently articulates the "precise nature of its burden." *Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998). Revco details "the volume of material requested, the ease of searching for the requested documents in the form presented, . . . and whether compliance threatens [its] normal operations." *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 175–76 (D.D.C. 1998). In particular, Revco has described a remarkable burden in the form of a manual review of 1,000,000 reporting instances at a huge cost in terms of both money and time. Revco First Decl. ¶¶ 19–20; *see Calero-Portocarrero*, 180 F.R.D. at 175–76 (holding that subpoena requiring manual review of over 1,000,000 pages of records imposed an undue burden). The

Court is especially sensitive to this burden because Revco is a nonparty. *Accord Watts*, 482 F.3d at 509.

Equifax's arguments to the contrary are unpersuasive. First, Equifax contends that Revco has failed to articulate a "specific or concrete burden." Equifax Reply at 7. Not so. The statements in Revco's two declarations prove otherwise. Second, Equifax draws on its own intuition: Revco's inability to search responsive documents more efficiently "strains credulity in light of modern e-discovery norms." *Id.* at 8. But Equifax cites no legal or factual basis to disbelieve Revco's declarations. And Revco's statements are not shocking. Even as narrowed, Request Five seeks an extraordinarily broad range of documents. *Cf. BuzzFeed*, 318 F. Supp. 3d at 359 (reasoning that a subpoena that "started as a demand for documents and testimony covering nine separate topics" became "substantial[ly] narrow[ed]" when limited to a request for affidavits to three yes-or-no questions).

This huge burden is not proportional to the needs of this case. In making this assessment, the Court also considers other relevant Rule 26 factors. Nonparty Revco's records are far from central to this case. Rather, Equifax's request is akin to market research on "a select group of non-parties" to determine whether the non-parties were affected by the new reporting policies in the same way plaintiffs claim they were. *See* Mot. Compel at 5. Revco's records are not especially "importan[t]" to the *Adams* case because they will not prove or disprove whether a key event occurred. *See BuzzFeed*, 318 F. Supp. 3d at 358 (cleaned up). Thus, the "benefit" of the proposed discovery does not outweigh its tremendous cost. *Id.* (cleaned up).

Nor does Revco, compared to another debt collector with more searchable records, have "relative[ly]" good "access to relevant information." *Id.*; *see also id.* (considering whether discovery can be obtained by another source that is "more convenient, less burdensome, or less

expensive”). More, Revco has already agreed to provide three reports it does possess on this issue. *See* Revco Suppl. Decl. ¶ 11. These reports pertain to credit reporting, the use of agents and letters to collect debts, and the use of SMS messages to collect debts. *Id.* And although Equifax has “agreed to reasonable cost shifting,” Equifax Reply at 9, that general offer is no assurance that Revco will not still face a tremendous burden to produce records of relatively slight importance.

The Court will quash Request Five. Because Revco succeeds with its undue burden argument, the Court need not consider Revco’s alternative argument that records responsive to Request Five are unduly sensitive. *See* Mot. Quash at 6–7. Finally, as Revco and Equifax have already narrowed much of Request Five, limiting it further is unrealistic. *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol’y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (explaining that courts can consider limiting a subpoena).

**B.**

Revco faulters on Request Seven. Request Seven seeks a wide array of information:

> Documents or data sufficient to show all Medical Debt accounts [Revco] ha[s] sought to collect since January 1, 2019, including the following information for each account: (a) date the debt was incurred; (b) due date of the debt; (c) amount of the debt; (d) whether [Revco] own[s] the Medical Debt; (e) cost to purchase the debt; (f) original creditor; (g) Medical Debt creditor at the time [Revco] attempted to collect it; (h) dates and methods of collection attempts made; (i) dates of collection and amount collected; (j) form of payment; (k) amount of collection retained by [Revco]; (l) revenue earned by [Revco]; (m) amount paid to the owner of the debt on whose behalf [Revco] collected it; (n) date the debt was furnished to [credit reporting agencies]; (o) whether the debt was flagged as false or incorrect by any Person; (p) any records showing the reason for non-payment; (q) any issues with the debt reported by the debt holder; (r) whether the debt

was removed from a Consumer Report; and (s) any indicators used to identify why the debt was removed from a Consumer Report.

Subpoena at 11–12. Equifax has agreed to accept a narrowed sample size of 10,000 responsive records. Revco First Decl. ¶ 28. It has also offered to remove fields (a) and (j) and to accept field (f) data in aggregated form. Mot. Compel at 9.

In broad terms, Revco objects to Request Seven on the ground that it requests personally identifying information and protected health information. A court must quash a subpoena that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). But Revco's arguments in its motion and reply diverge. *Compare* Mot. Quash at 7–8, *with* Revco Reply at 4. Its divided house does not stand.

Start with the motion to quash. Here Revco focuses on its contractual obligations. Revco claims that a "number" of its "business associate agreements with its healthcare provider clients require that Revco give the covered entity notice and an opportunity to object before [any] disclosure in litigation." Revco First Decl. ¶ 32; *see* Mot. Quash at 7. Unlike its statements about Request Five, Revco's descriptions of its business agreements are too vague to overcome its heavy burden. *See Millennium TGA*, 286 F.R.D. at 11. It does not explain these notice requirements in any detail, nor does it predict how many responsive documents may trigger these notice requirements, whether a client would need a separate notice for each responsive record, or how burdensome review and notification would be. To succeed on its motion to quash, Revco must do more. *See Ass'n Am. Physicians & Surgeons*, 837 F. Supp. at 458 n.2.

In any event, Equifax has clarified that it does not seek personally identifying information. To the extent that responsive documents contain names, addresses, account numbers, or clinical narratives, Equifax states that Revco can redact this information. Equifax Reply at 11. Alternatively, Equifax requests "only data that is de-identified under 45 C.F.R.

§ 164.514(b)." *Id.* And it welcomes Revco to identify any sensitive information as "Outside Counsel's Eyes Only." *Id.* That designation would prevent Equifax from reviewing the data under the protective order entered in *Adams*. *Id.* Lastly, Equifax has also offered to accept aggregated payment information in response to request (f). Mot. Compel at 9. These concessions fatally undermine Revco's privacy concerns.

In reply, Revco changes gear and focuses entirely on state laws governing disclosure of sensitive health information. *See* Revco Reply at 4. Revco has forfeited this argument by not raising it in its initial motion. *See Entergy Ark., LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025). Indeed, Revco fails to identify even a single state law in its brief. The Court will not do Revco's work for it. Revco's glancing allusions to sensitive information and privacy concerns do not warrant an order quashing Request Seven.

**IV.**

In sum, Revco has carried its burden with respect to Request Five but not Request Seven.

For these reasons, it is hereby

**ORDERED** that Revco's [1] Motion to Quash is **GRANTED** as to Request Five as narrowed and **DENIED** as to Request Seven.

It is further **ORDERED** that Equifax's [2] Cross-Motion to Compel is **DENIED** as to Request Five as narrowed and **GRANTED** as to Request Seven.

**SO ORDERED.**

2026.10.28
16:25:34 -04'00'

Dated: October 28, 2026

TREVOR N. McFADDEN
United States District Judge